# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUIFANG HU ) <br> 3712 Powell Lane ) <br> Falls Church, VA 22041 ) <br> ) <br>       Plaintiff, ) <br>   v. ) <br> ) <br> K4 SOLUTIONS, INC ) <br> 8300 Boone Blvd., Suite 830 ) <br> Vienna, VA 22182 ) <br> ) <br>   Serve:  Natarajan Krishnan, President of ) <br>          K4 SOLUTIONS, INC ) <br>          8300 Boone Blvd., Suite 830 ) <br>          Vienna, VA 22182 ) <br> ) <br>       Defendants. ) <br> ) | **Case No. _____** <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

### NATURE OF THE CASE

1. Having exhausted her administrative remedies with the Equal Employment Opportunity Commission (EEOC), Plaintiff Ruifang Hu, brings this case against K4 Solutions, Inc. for violations of Title VII of the Civil Rights Act of 1964 as amended for national origin, race, and gender discrimination, for hostile work environment creation and maintenance in violation of those statutes, for retaliation for her filing internal complaints and persisting in seeking correction of these matters and also, should her federal complaints not be successful, for wrongful discharge under District of Columbia law. Plaintiff's letter of Notice of Suit Rights by the EEOC was dated February 22, 2018, and was received by plaintiff several days later. The instant action was timely instituted before the expiration of 90 days of Plaintiff's receipt thereof. Plaintiff seeks compensation for her monetary damages, her emotional distress and

1

psychological harm and punitive damages for the willful nature of the harms perpetrated against her as ratified, joined and adopted at the management levels of the defendant company.

## JURISDICTION AND VENUE

2. Jurisdiction exists in this Court because this is a federal issue case under Title VII of the Civil Rights Act of 1964 as amended by 42 U.S.C. § 2000e et seq. Plaintiff also brings this action pursuant to the Federal Equal Pay Act, 29 U.S.C. §§ 206(d)(1), *et seq., and* Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. Venue exists in this Court because all of the events complained of herein occurred in the District of Columbia and the defendants have a presence in the District of Columbia.

## PARTIES[1]

3. Plaintiff Ruifang Hu (hereinafter "Plaintiff" or "Ms. Hu"), is a female U.S. citizen of Chinese ancestry and birth residing in Falls Church, Virginia. She was employed at the U.S. Customs and Border Protection ("CBP" or "Agency") at the Agency's Electronic Via Update System Call Center in Washington, DC as set out in the details infra until she was terminated as set out in detail below. The title she was given in her position was CBP EVUS Call Center's Customer Service Representative.

4. The defendant K4 Solutions, Inc. is a Virginia company which since 2002 is run and owned by a father and daughter. K4 Solutions entered into a contract with the Agency and issued the plaintiff in August 2016 an offer letter serving the Agency as a Customer Service Representative at the Agency's Electronic Via Update System Call Center. At the time of events giving rise to this complaint, K4 Solutions assisted managing the Call Center.

---

[1] Charges against RDTS and the Agency are currently under EEOC's process. Plaintiff may seek to include new defendants later, and the fact that Plaintiff made the strategic decision to keep the focus on K4 Solutions has no bearing on this complaint whatsoever.

2

5. The U.S. Customs and Border Protection's Electronic Visa Update System Call Center (hereinafter "EVUS Call Center") was created by Congress in 2016. Federal funds were authorized to aid in the construction, development, improvement, and maintenance of EVUS Call Center. The EVUS Call center is formed, owned, and administered by the CBP.

6. Right Direction Technology Solutions LLC (hereinafter "RDTS") is a Maryland company with its principal place of business located at 300 E. Lombard Street, Suite 840, Baltimore, MD 21202. At all times relevant, RDTS is a contractor of the CBP and assistes managing the EVUS Call Center with K4 Solutions.

## BACKGROUND FACTS COMMON TO ALL COUNTS

7. Plaintiff was hired by Defendant in August 2016 and was given the title of Customer Service Representative in EVUS Call Center, which was under the directorship and supervision of the U.S. Customs and Border Protection.

8. The task that the plaintiff was asked to do required that the plaintiff respond to general inquiries about EVUS and general questions about individuals' EVUS applications, advise China B1/B2 Visa holders on how to make their trips to the U.S., use Customer Service Management software connected to phone lines and the internet to facilitate legitimate travel between the U.S. and China, and translate questions/responses between English and Chinese.

9. When the plaintiff was hired at EVUS Call Center she was placed under the immediate supervision of on-duty CBP on-site supervisors and management CBP officials.

10. Over the course of Plaintiff's employment at EVUS Call Center, she received significant awards for her performance. By way of example, in October 2016 Plaintiff earned the K4 Solutions' certificate of appreciation for working continuous long hours during weekends to help alleviate a workforce shortage crisis.

11. In late September 2016, Plaintiff was invited to interview for a position of QA supervisor; she had her interview on September 23, 2016.

12. After her interview, Plaintiff was congratulated by her interviewer for being offered a position as QA supervisor. The offer was immediately revoked, and Plaintiff was denied for the QA position because Ms. Duvall, vice-president of K4 Solutions, stated that Plaintiff failed to speak more like an American.

13. In late September, K4 Solutions offered the position to a less qualified male applicant who was soon fired as unqualified.

14. Despite the fact that the QA position was not advertised, K4 Solution subsequently filled the position by another white male around October 2016.

15. In December 2016 after a second male QA was discharged becaue he was not qualified for the position, Plaintiff learned that the position had been taken by Ms. Abigail Johnson, a female of Chinese descent married to a white male and with a Caucasian last name, who was hired two weeks ago as CSR. Ms. Johnson was not as qualified for the Quality Assurance Analyst position as Ms. Hu and had never served as a CSR. K4 Solutions never followed up with Ms. Hu about the status of her application.

16. Ms. Johnson, realizing that she had fewer qualifications and that Ms. Hu's qualifications were a better match for the QA position, started telling Ms. Hu that she "did not belong here" and should leave soon.

17. Ms. Johnson and Ms. Duvall often behaved unprofessionally in their relations with their subordinates, Messieurs Doe and Roe, and it became commonly thought among the staff working at EVUS Call Center that favorable consequences were given to those male staff engaged in an intimate relationship with supervisors.

18. Based on the Plaintiff's information and belief, her co-workers also complained about Ms. Johnson and Ms. Johnson's discrimination and outbursts. Eventually based on information and belief, because of Ms. Johnson's lack of qualifications for the job, RDTS hired Ms. Yeh as on-site program manager in January 2017, who possessed powers of direction over Ms. Johnson, to coordinate the work at EVUS Call Center.

19. Plaintiff herself complained through internal procedures about Ms. Johnson's unwelcome harassing activities but the K4 Solutions managment persons to whom she complained, Ms. Duvall and Mr. Bethea, while holding a meeting with the Agency and the plaintiff present, refused to listen when the plaintiff spoke of these problems and mentioned specific behavior by Ms. Johnson, instead pointedly refusing to hear what the plaintiff was saying.

20. In response to Plaintiff's complaining, the defendant took an attitude of displeasure towards her and maintained a hostile work environment. Plaintiff's work hours were substantially cut in February 2017.

21. At that time, it became clear that Plaintiff was being retaliated against for complaining about her mistreatment. She reached out to Ms. Duvall and Mr. Bethea regarding K4 Solutions's disciminatory practices, including pay and work hours, the latter had instructed her to follow up with him if she experienced any retaliation, and no response came from either.

22. K4 Solutions then asserted in or around early February that Plaintiff would resign in March.

23. On March 17, 2017, in response to a group email sent from Ms. Johnson, which solicited Plaintiff's opinion in response to issues raised by sender Ms. Johnson regarding K4's operating procedures and specifically asked Plaintiff to consult the CBP officers for any relevant questions, Plaintiff voiced her concerns regarding discrimination in the hiring and promotion of

5

job candidates, resulting in unqualified persons filling Chinese language skills-required positions, stated that the defendant should "convey an impression of objectivity" and "maintain impartiality" during their work, and sought to ensure that K4 Solutions deliver the highest quality service to its government client.

24. On March 18, 2017, while Plaintiff was still on FMLA leave, Defendant notified Plaintiff that her employment had been terminated, effective immediately, because her emailing was viewed as "illegal" activity.

25. Plaintiff has it on information and belief that K4 Solutions anounced Ms. Hu's termination in public saying that she was fired because the Agency said that the email complaint was "illegal".

## COUNT I – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

26. Paragraphs 1 through 25 are realleged as though fully set forth herein.

27. The law of the District of Columbia supports a claim for wrongful discharge in violation of public policy. Because Ms. Hu was terminated for her complaining about illegal and clearly unethical activities, her termination was unlawful.

28. By a series of actions, Defendants retaliated against Ms. Hu for engaging in reporting unlawful and discriminatory activities that violated federal laws such as 34 U.S.C. § 12601 and 42 U.S.C. § 3789d. Ms. Hu was required to do so by the U.S. Customs and Border Protection Standards of Conduct. As such, any conduct that would potentially jeopardize the integrity of the Agency's enforcement in immigration processes has the affect of corrupting the ability of state and federal agencies to effectively regulate immigration. The continued integrity of the CBP's immigration mission is a matter of serious public concern.

29. Ms. Hu reported the discriminatory activities and violations of civil rights that she observed on March 17, 2017 to Defendant and the Agency because she reasonably believed that

the employment practice of the defendant was unlawful. The alleged category of employees that were offered QA supervisor position over the periods statistically shows that a greater percentage of employees of non-Caucasian female were adversely affected; those who were unable to "grasp the meaning of Chinese terms" were promoted and filled Chinese language skills-required positions; those applicants using VPN were singled on the basis of ethnic, expressed opinions, or political affiliation for discrimination. This led Ms. Hu to reasonably believe that K4 Solution's discriminatory practices not only have a disparate impact on non-Caucasian female employees but also implicit racial prejudice and policy bias towards Chinese immigrant and non-immigrant visa applicants.

30. Because of her stated opposition in this instance, along with the other complaints about discriminatory practices, Ms. Hu ultimately was terminated. This discharge was wrongful because public policy, as rooted in the statutes discussed above and the binding ethics code of the Agency, required that Ms. Hu not participate in the discimination and that she acted against discimination.

31. Defendant is therefore liable under D.C. law to provide Ms. Hu with all relief necessary to make her whole for their actions against her, which resulted in her discharge from employment at EVUS Call Center.

**COUNT II – RACE, GENDER, OR NATIONAL ORIGIN DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII**
42 U.S.C. § 2000e, et seq., as amended

32. Paragraphs 1 through 31 are realleged as though fully set forth herein.

33. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, provides that:

(a) It shall be an unlawful employment practice for an employer
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

34. Defendant K4 Solutions engaged in unlawful employment practices prohibited by Title VII by treating Ms. Hu and other similarly situated employees less preferably than Caucasian male employees. Throughout her job application and employment, Ms. Hu and other similarly situated employees were held to higher standards, treated with less respect and were promoted less quickly and often than their Caucasian male counterparts.

35. Two women (including Ms. Hu) and several male candidates applied for the QA opening in or about September 2016. The applications of both women were disregarded, despite the fact that Ms. Hu was the most experienced and best-qualified candidate. Instead, K4 Solutions hired Mr. Doe #1, a less qualified male who was subsequently fired as unqualified. In fact, shortly after the discharge of Mr. Doe #1, K4 Solutions offered the position to another white male Mr. Doe #2.  By hiring Mr. Doe #2 instead of Ms. Hu without considering Ms. Hu and other female candidates, K4 Solutions turned a blind eye toward his qualifications and used gender, race, or national origin as proxies for determining whether a candidate should be chosen. Mr. Doe #2 was found not qualified and was terminated.

36. As a direct and proximate result of Defendant K4 Solutions' willful mistreatment and termination, Ms. Hu has suffered economic damages, mental and emotional harm, anguish, and humiliation.

37. Defendant K4 Solutions' practices and procedures have had a disparate impact upon Ms. Hu, as a female employee of Chinese descent, with respect to the terms and conditions of her employment. Defendant K4 Solutions' practices and procedures created a hostile work environment for Ms. Hu and for other similarly situated employees as well.

38. Given the continuous nature of Defendant K4 Solutions' discriminatory conduct, which persisted throughout Ms. Hu's employment at EVUS Call Center, Ms. Hu is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

39. By reason of Defendant K4 Solutions' discriminatory conduct, Ms. Hu is entitled to all legal and equitable remedies available under Title VII.

**COUNT III – DISCRIMINATION AND RETALIATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**
D.C. Code § 2-1402.11

40. Paragraphs 1 through 39 are realleged as though fully set forth herein.

41. As described above, Defendant K4 Solutions' discrimination of and failure to hire Ms. Hu because of her gender, race, national origin, or political affiliation is in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1402.11.

42. Through their discriminatory conduct with respect to compensation and the terms and conditions of Ms. Hu's employment, Defendants deprived Ms. Hu of equal employment opportunities in violation of D.C. Code § 2-1402.11.

**COUNT IV- VIOLATIONS OF THE FEDERAL EQUAL PAY ACT**
29 U.S.C. § 206(d)(1), *et seq.*

43. Paragraphs 1 through 42 are realleged as though fully set forth herein.

44. Defendant K4 Solutions' unlawfully discriminated against Ms. Hu in having compensated her in an amount less than her similarly situated male colleagues.

45. Mr. Jiang, for example, was hired to do the same work as Ms. Hu in the position of CSR, and was paid significantly more, despite being less qualified. Plaintiff and her coworkers reported that discrimination to the Agency and K4 Solutions. K4 Solutions rejected all demands for equal pay and responded that Mr. Jiang should not have disclosed his pay information.

46. On information and belief, other similarly situated males at EVUS Call Center also received more pay for the substantially similar work as Ms. Hu.

47. Defendant K4 Solutions violated the Federal Equal Pay Act by subjecting Ms. Hu to unequal pay on the basis of her gender.

48. Defendant K4 Solutions caused, attempted to cause, or contributed to, the continuation of salary and bonus rate discrimination in direct violation of the Federal Equal Pay Act.

49. Defendant K4 Solutions knew of, or showed reckless disregard for, the fact that their conduct violated the Federal Equal Pay Act.

50. As a direct result of Defendant K4 Solutions' willful, knowing, and intentional discrimination, Ms. Hu suffered harm, including, but not limited to, lost earnings.

51. Ms. Hu is therefore entitled to all remedies available for violations of the Federal Equal Pay Act, including liquidated damages for willful violations and attorneys' fees.

### **COUNT V- DEFAMATION AND BUSINESS DEFAMATION**

52. Paragraphs 1 through 51 are realleged as though fully set forth herein.

53. K4 Solutions executed a public campaign to tarnish the Plaintiff's careers and ruin her reputation (specifically in the communities wherein Plaintiff was employed or could reasonably expect to be employed in the future), by issuing statements (implicit and explicit) to the Agency, the staff Plaintiff had worked with, neighboring contractor companies, and in public meetings alleging that Plaintiff was responsible for causing a "difficult" situation between K4 Solutions and Agency, that Plaintiff made misrepresentation to the federal government, and that she did not turn in her ID cards to the Agency.

54. K4 Solutions intentionally executed a campaign to ruin the Plaintiff's business reputations by making false statements that she had engaged in misconduct and/or deficient performance that justified her dismissal.

55. Defendant knew when publishing the statements that they were false or published them with reckless disregard as to their truth or falsity.

56. The statements impute unlawful acts to Ms. Hu and thus are defamatory per se.

57. The statements are not reasonably capable of an innocent construction and cast the Plaintiff in a light that would be highly offensive to the reasonable person.

## COUNT V- VIOLATION OF FAIR LABOR STANDARD ACT
29 U.S.C. § 201, *et seq*.

58. Paragraphs 1 through 57 are realleged as though fully set forth herein.

59. The FLSA mandates that an employer must pay employees overtime wages in the amount of one-and-one-half times the employee's regular rate of pay for all hours worked each week in excess of forty.

60. At all times, Plaintiff was an "employee" covered by §207(a)(1) of the FLSA, and defendant was Plaintiff's "employer" under §207(a)(2) of the FLSA.

61. Defendant compensate Plaintiff a portion, but not all, of the hours she worked over forty in each week ("overtime hours"). By way of example, in October 2016, Plaintiff worked 27 hours in a row during a weekend, and Defendant had knowledge that Plaintiff worked over 40 hours a week during those periods. Instead, Defendant gave Plaintiff $200 cash reward.

62. Defendant's failure and refusal to pay Plaintiff the wages she rightfully earned as required by the FLSA, DCMWA, and DCWPCL, including overtime at one-and-one-half times her regular rate, was willful and intentional, and was not in good faith.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant, K4 Solutions, and that the Court:

11

a) award her direct and consequential compensatory economic damages for lost past and future wages, privileges of employment, and other damages for lost compensation and job benefits suffered by Plaintiff to be determined at trial;

b) award her damages for emotional distress, pain and suffering, violation of her civil rights, and for being vexed and troubled by the Defendant's violation of Title VII;

c) award her statutory compensatory and punitive damages for the Defendant's violation of Title VII;

d) declare that K4 Solutions' employment policies, practices, and/or procedures challenged herein are illegal and in violation of Title VII and other afore-mentioned statutes;

e) award all of her costs of preparing and pursuing this claim, to include exhausting her administrative remedies before the EEOC to include all counsel fees in accordance with the Laffey Matrix as provided for by statute and any expert witness fees that might have been required.

f) award such other legal and equitable relief as is just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Dated: May 29, 2018

                                             Respectfully submitted,

                                             /s/
                                             Pengcheng Si, D.C. Bar # 1017850

                                             **DWS Law Group PLLC**
                                             1629 K ST. NW, STE 300
                                             WASHINGTON, DC 20006
                                             Telephone: (202) 810-3566
                                             Email: ssi@dwslawgroup.com
                                             *Counsel for Plaintiff*